UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

    v.                              CRIMINAL NO. 2:05cr84

SHURAY VONIQUE BYNUM,

        Defendant.

## OPINION

This matter came before the court on defendant Shuray Vonique Bynum's ("Bynum") motions for leave to interview jurors and for a new trial.  For the reasons set forth below, the court **DENIES** the motions.

## I.  Factual and Procedural History

On April 7, 2005, at approximately 1:30 p.m., Detective Timothy McAndrew[1] ("McAndrew") obtained information from a confidential informant ("CI") about one Calvin "Teko" Coston ("Coston").  The CI reported that within the last 72 hours, he had been inside the residence of Coston and his wife, Shuray Vonique Bynum ("Bynum"), at 80 Cushing Street in Portsmouth, Virginia.  The CI stated that Coston kept crack cocaine and firearms at the residence.  The CI described Coston as an African American male and reported that Coston was presently in the passenger's seat of a

_____

[1] McAndrew is a detective with the Portsmouth Police Department's Special Investigations Unit, as well as a Task Force Agent for the Drug Enforcement Agency's Norfolk Field Office.

white Honda Civic parked at the intersection of Astor Avenue and Pinewell Street in Portsmouth.  The CI said that Coston possessed crack cocaine at the time and was most likely concealing it in his buttocks.

About ten minutes after receiving the information, McAndrew, along with officers Vance Fountain ("Fountain") and Stephen Johnson, arrived at the corner of Astor and Pinewell.  A white Honda Civic was parked at the intersection with two African-American males in the car, one in the driver's seat and one in the front passenger's seat.  The officers moved toward the passenger's side of the vehicle when the individual in the passenger's seat noticed the officers' approach.  The individual reached into the rear of his pants, where the informant indicated that Coston would be hiding the crack cocaine.  The officers ordered the individual to keep his hands in sight.  Instead, the individual attempted again to retrieve something from the back of his pants.  Fountain spotted a plastic baggie protruding from the rear of the individual's pants and believed that the baggie's packaging possessed indications of the presence of narcotics.  Fountain retrieved the baggie and concluded that it contained suspected cocaine.  The officers arrested and searched the individual, recovered $392 and a cell phone in addition to the crack cocaine, and confirmed that the individual was Coston.

At 2:15 p.m., McAndrew read Coston his <u>Miranda</u> rights.  Coston

2

initially denied that he lived at 80 Cushing Street and stated that his address was 112 Ivey Street in Portsmouth.  Coston eventually conceded that he had a residence at 80 Cushing Street, and McAndrew obtained a search warrant for that address.  During the search of 80 Cushing Street, the officers found, in Bynum's bedroom, more than 90 grams of cocaine, a dresser with a false bottom, small plastic drug baggies, two digital scales, one nine millimeter handgun, ammunition, and several hundred dollars in cash.

On June 23, 2005, a grand jury returned an indictment naming Coston and Bynum ("defendants"), charging each of them with five counts.[2]  On September 21, 2005, the court conducted a hearing to entertain the defendants' motions to suppress certain evidence.  The court found all evidence to have been constitutionally obtained and admissible.  On October 4, 2005, Coston pled guilty to Counts Two and Three.  Bynum decided to proceed to trial.  On October 13, 2005, following a three-day trial, a jury found Bynum guilty on Counts One, Four, and Five.  A special verdict found Bynum guilty

---

[2] Count One charged Bynum and Coston with Conspiracy to Possess With the Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  Count Two charged the defendants with Possession With the Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  Count Three charged Possession of a Firearm and Ammunition in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(2).  Count Four charged the defendants with Convicted Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Count Five charged the defendants with  Maintaining a Place for the Purpose of Manufacturing, Distributing, or Using Cocaine Base, in violation of 21 U.S.C. § 856.

for less than five grams of cocaine base on Count One.

After the verdict was returned and the court recessed and dismissed the jury, one of the jurors ("Reporting Juror") returned to the jury room and sent information to the court, through the Court Security Officer, of a potential impropriety on the part of another juror ("Responding Juror").[3]  The court immediately called the parties back to the courtroom so that the Reporting Juror could be brought into the courtroom and her information could be put on the record.  Bynum's defense counsel had left for the airport and could not be reached.  The Reporting Juror related that on the way out to lunch on the second day of trial, she overheard the Responding Juror express that she was uncomfortable because she knew Bynum's family and they were looking at her.  See Tr. of Juror Testimony at 4 (Oct. 13, 2005).[4]

The court determined that it was appropriate to hold a hearing on the matter and conducted an evidentiary proceeding on October 28, 2005, at which all parties were present with counsel and at which the Responding Juror testified.   At the hearing, the Responding Juror explained that during trial testimony, a witness

---

[3] At the start of deliberations, the jury chose the Responding Juror to be the foreperson.  The names of the individual jurors are not used herein to protect their privacy.

[4] As would become evident, the Reporting Juror somewhat misunderstood the Responding Juror's comments.  See infra at 4-5.

4

mentioned the name "Teko,"[5] which she recognized as the name of a relative's boyfriend. Tr. of Juror Testimony at 4-5 and 6-7 (Oct. 28, 2005). The Responding Juror also knew that the "Teko" her relative dated had recently been arrested. Id. at 6. The Responding Juror had never met Coston, her relative's boyfriend, Bynum, or Bynum's family, and did not know any of them personally. Id. at 3-4 and 7-9.[6] Moreover, it was not until after deliberations were completed and the jury returned its verdict that the Responding Juror was able to confirm that Coston and the "Teko" her relative dated were the same person. Id. at 8-9. The Responding Juror expressed, to the court's satisfaction, that the possible connection between her relative's boyfriend and Bynum's husband did not interfere with her ability to impartially execute her juror duties. Id. at 5. Neither the government nor Bynum's counsel had questions for the Responding Juror or requested the court for permission to ask her questions when she was available.[7]

---

[5] "Teko" is the middle name of Coston. The court has confirmed that prior to the witness saying "Teko," Coston had never been referred to during the trial as "Teko," "Calvin Teko Coston," or "Teko Coston." Hence, the Responding Juror had no reason to have previously discovered that a "Teko" was involved in Bynum's trial.

[6] The Responding Juror testified: "I didn't know who she was. I don't know her. I don't know anyone who was in the courtroom that was with her." Tr. of Juror Testimony at 4 (Oct. 28, 2005).

[7] In fact, Bynum's counsel stated that her "big concern was to determine whether or not there was some allegation of a threat....I think it is pretty clear from the record today and from this person's testimony that is not the case." Tr. of Juror Testimony

On November 10, 2005, Bynum filed a Motion for New Trial Under Federal Rule of Criminal Procedure 33 and Memorandum in Support Thereof.  The government responded on November 22, 2005, and Bynum replied on November 30, 2005.  A hearing was held on the motion on January 17, 2006.  Bynum makes two arguments.  First, she requests that the court "allow her to interview the other jurors as to what they heard from the Foreperson, whether it was discussed further, and whether or how it may have affected their deliberations." Def.'s Mot. for New Trial at 3.[8]  Second, Bynum argues that at trial Detective McAndrew delivered misleading testimony, thereby warranting a new trial.  Id. at 4-6.  McAndrew testified that the Honda that Coston occupied when he was arrested was registered in Bynum's name and was registered to 112 Ivey Street, the address at which Coston lived at least part time.  The car is in fact registered in Bynum's name, but at 80 Cushing Street, which was Bynum's residence and also where Coston lived part time.  Bynum argues that this testimony requires a new trial because the Department of Motor Vehicle ("DMV") records obtained by Bynum constitute "new evidence" correcting the inaccurate testimony proffered by McAndrew.  Bynum also asserts that Detective

at 14 (Oct. 28, 2005).

[8] In her motion, Bynum did not actually ask for a new trial on this ground, but only requested permission to interview other jurors.  At the hearing conducted on January 17, 2006, Bynum stated that if her request was denied, then she moves for a new trial on this ground.

McAndrew's testimony was false.

## II.  Juror Taint

**A.  Applicable Law**

**      1.  Interviewing Jurors**

"Requests to impeach jury verdicts by post-trial contact with jurors are disfavored." United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988).  Moreover, "jury verdicts are not to be lightly cast aside." Stockton v. Virginia, 852 F.2d 740, 744 (4th Cir. 1988).  The United States Supreme Court has cautioned that

> [D]ue process does not require a new trial every time a
> juror has been placed in a potentially compromising
> situation.  Were that the rule, few trials would be
> constitutionally acceptable.  The safeguards of juror
> impartiality, such as voir dire and protective
> instructions from the trial judge, are not infallible; it
> is virtually impossible to shield jurors from every
> contact or influence that might theoretically affect
> their vote.

Smith v. Phillips, 455 U.S. 209, 217 (1982).  As the Court has explained, investigations into jury verdicts can "seriously disrupt the finality of the process," deter "full and frank discussion in the jury room," chill "jurors' willingness to return an unpopular verdict," and undermine "the community's trust in [the] system." Tanner v. United States, 483 U.S. 107, 120-21 (1987).  The Fourth Circuit has added that courts should "avoid[] needless harassment of jurors by the losing party." Stockton, 852 F.2d at 744.

Consequently, a defendant seeking the court's permission to interview jurors must make a "threshold showing" that an extraneous

matter was introduced into the jury's deliberative process. <u>Gravely</u>, 840 F.2d at 1159. An "extraneous matter" is "information about the specific case that the jury had acquired outside of the judicial process," or an influence "originating outside of normal courtroom proceedings which influences jury deliberations, such as a statement made by a bailiff to the jury or a threat against a juror." <u>United States v. Johnson</u>, 1999 U.S. App. LEXIS 17796, at *35 (4th Cir. 1999) (unpublished) (citation and internal quotation marks omitted). "[T]he defendant must do more than speculate" that the jury was introduced to an extraneous matter. <u>United States v. Wright</u>, 1997 U.S. App. LEXIS 29798, at *4 (4th Cir. 1997) (unpublished) (citation and internal quotation marks omitted). Rather, she must provide "clear, strong, substantial and incontrovertible evidence...that a specific, non-speculative impropriety occurred.'" <u>Id.</u> (citation and internal quotation marks omitted). "[T]he trial judge has substantial discretion in deciding whether allegations are of sufficient substance to require investigation and, if so, how the investigation should be conducted." 3 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 554 (2005). Hence, "the trial court may deal with such claims as it feels the particular circumstances require." <u>Gravely</u>, 840 F.2d at 1159.

## 2. **Motion for a New Trial**

If a court finds that the jury was introduced to an extraneous

matter, it is subjected to significant limitations when determining if jury impropriety requires a new trial.  See Tanner, 483 U.S. at 116-27.  The court is free to determine if an extraneous matter came to the jury's attention, but it may not consider whether the extraneous matter actually affected the jury's deliberation or "mind or emotions...or mental processes in connection" with their deliberations.  Fed. R. Evid. 606(b); see also Fullwood v. Lee, 290 F.3d 663, 679-680 (4th Cir. 2002) (explaining that under Rule 606(b), a court may inquire into the fact of an extraneous influence, but not into the effect this external matter had on the jury's deliberation).   Rather, once the court finds that an extraneous matter came to the attention of the jury,  "a presumption of prejudice arises."  United States v. Brooks, 957 F.2d 1138, 1142 (4th Cir. 1992).  The government must rebut the presumption by showing that the jury was not prejudiced.  Id.  The government carries its burden by demonstrating that "there is [not] a reasonable possibility that the jury's verdict was influenced by the" extraneous matter.   Id. at 1143 (citation and internal quotation marks omitted).

When determining if the government rebutted the presumption, the court may consider "whatever circumstantial evidence is available, including...the facts and circumstances surrounding the extraneous" matter.  Stockton, 852 F.2d at 744.  The court may also evaluate evidence regarding the juror's general mental state, as

long as the evidence does not pertain to her mental process in deciding the case.  See, e.g., Rushen v. Spain, 464 U.S. 114, 121 n.5 (1983) ("A juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide.").  Highly relevant to this analysis is "the strength of the government's case."  26 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE – CRIMINAL § 633.07 (2005).  See also United States v. Santana, 175 F.3d 57, 67 (1st Cir. 1999) (analyzing whether the strength of the evidence rebutted the presumption of prejudice); United States v. Bassler, 651 F.2d 600, 603 (8th Cir. 1981) (same); United States v. Harber, 53 F.3d 236, 243 (9th Cir. 1995) (same); United States v. Hornung, 848 F.2d 1040, 1045 (10th Cir. 1988) (same); United States v. Rowe, 906 F.2d 654, 657 (11th Cir. 1990) (determining whether the strength of the government's case is sufficient to overcome the defendant's evidence of the likelihood of jury prejudice).

## B.  Discussion

In handling this matter, the court has held two evidentiary hearings and a third hearing for arguments.  Bynum did not question the Responding Juror when she had the opportunity to do so at the October 28, 2005, hearing.  The court has meticulously reviewed the record and the parties' briefs.  After this consideration, the court **DENIES** Bynum's motions to question other jurors and to grant a new trial based on alleged juror improprieties.

The extraneous matter that came to the Responding Juror's and the Reporting Juror's attention was not extrinsic information about the case itself.[9]   All the Responding Juror knew was that her relative's boyfriend was "Teko" and that he was arrested and in jail.   She did not know for sure if he was the same person as Coston until after the trial.   Tr. of Juror Testimony at 6-7 and 9 (Oct. 28, 2005).[10]   Moreover, the facts of Coston's arrest and drug-dealing were presented as evidence to the jury.   Thus, there is no extraneous information, but rather only the potential extraneous "influence" from the Responding Juror's realization that a relative's boyfriend might be the defendant's husband, and her expressed discomfort that members of Bynum's family might have looked at her.   Id. at 4-5.

---

[9] Tellingly, Bynum makes no argument for a new trial based on the Responding Juror or the Reporting Juror having become aware of an extraneous matter.   Rather, Bynum speculates that other jurors also might have learned of the matter.   See infra at 14.   However, out of an abundance of caution, the court will first address issues regarding the Responding Juror and the Reporting Juror.

[10] When the Responding Juror testified about "Teko," she stated:

> I did not know until – a hundred percent that that's who that was until after the case, because, like I said, if I was to see him in person, he does not know who I am, and I would not know who he was if he was to walk right past me.   I did not know where he stayed at.   All I knew was that there was a guy named Teko in jail.   That's all I knew.   I did not know a hundred percent that that's who that was until after the case.

Tr. of Juror Testimony at 9 (Oct. 28, 2005).

With respect to the facts and circumstances surrounding the extraneous influence, no external pressure was brought to bare on the Responding Juror.  There is absolutely no evidence of contacts by Bynum's family, improper communications, or other forms of external coercion.  See id. at 14.  Rather, there is merely the Responding Juror's recognition that "Teko" might be the same person as Coston, and the discomfort that members of Bynum's family might have looked at her.  Id. at 4-5.  The Responding Juror did not personally know Coston, Bynum, or anyone in the courtroom.  Id. at 4.  Courts have required a far greater influence, with a far more dramatic effect on a juror's mental state, to demonstrate that the presumption of prejudice is strong.  See, e.g., United States v. Cheek, 94 F.3d 136, 144 (4th Cir. 1996) (reversing denial of motion for a new trial where a party tried to bribe a juror, leaving the juror "in no condition to sit on [the] jury" because he was "devastated," "fearful," "troubled," and "concerned about his safety and his integrity").[11]  Moreover, when the Responding Juror testified about this matter at the evidentiary hearing, she guaranteed that it did not affect her ability to execute her duties

---

[11] The court stresses that the burden is not on Bynum to demonstrate prejudice.  Rather, the burden is on the government to rebut a presumption of prejudice by showing that there is no reasonable possibility that the extraneous matter prejudiced Bynum. When weighing whether the presumption is rebutted, the court must weigh the strength of evidence of prejudice against the strength of evidence of no prejudice.  In a case such as this, where there is substantial evidence of no prejudice, and virtually no evidence of any prejudice, the government has carried its burden.

impartially.[12]   Having observed her testimony, demeanor, and
mannerisms, during the trial as well as at the October 28, 2005,
hearing, the court is more than satisfied with her assurances.  See
United States v. Sandalis, 39 Fed. Appx. 798, 801-02 (4th Cir.
2002) (holding that "the district court is uniquely situated to
weigh the evidence and make credibility determinations," and thus
did not abuse its discretion when it believed a juror's post-
verdict testimony that she was not prejudiced by her prior negative
business dealings with the defendants).  Moreover, the overwhelming
evidence of Bynum's guilt demonstrates that the verdict was a
product of the facts, not an extraneous influence.[13]   Thus, any
presumption of prejudice is rebutted.

Likewise, the court finds that any presumption of prejudice
with respect to the Reporting Juror is rebutted.  She gave no
indications when she testified that what she overheard affected her
ability to execute her duties impartially.   Bynum has made no

---

[12] While testifying, the Responding Juror sought to demonstrate
her lack of prejudice by explaining that when deliberations
started, she initially argued that Bynum was not guilty.  Tr. of
Juror Testimony at 5 (Oct. 28, 2005).  The Reporting Juror also
testified that the Responding Juror unsuccessfully sought to
convince the other jurors that Bynum was not guilty.  Tr. of Juror
Testimony at 5 (Oct. 13, 2005).  However, such testimony regarding
the jury's deliberations is incompetent under Federal Rule of
Evidence 606(b).   Consequently, the court quickly stopped the
Responding Juror and told her not to testify as to such matters.
The court has not considered those parts of the Responding Juror's
and the Reporting Juror's testimony in making any credibility
determinations, factual findings, or legal conclusions herein.

[13] See infra at 16-17.

arguments as to how or in what way the Reporting Juror would have been prejudiced.  These circumstances simply do not indicate that any presumption of prejudice is strong,[14] and was rebutted by the Reporting Juror's own testimony, as well as the strength of the government's case.[15]

Consequently, as Bynum apparently recognizes herself through lack of argument,[16] there is no basis for granting a new trial based on an extraneous matter affecting the Responding Juror or the Reporting Juror.  At the January 17, 2006, hearing, however, Bynum speculated that other jurors might have overheard the comment, misinterpreted it as she alleges the Reporting Juror did,[17] and misinterpreted the comment in such a way as to prejudice Bynum.  Thus, she seeks leave to interview other jurors.  Her chain of inferences, with its multiple links, "is a mere fishing expedition."  See Gravely, 840 F.2d at 1159.  Bynum offers no evidence to substantiate her argument.[18]  In fact, her brief

---

[14] See supra note 11.

[15] See infra at 16-17.

[16] See supra note 9.

[17] See supra note 4.

[18] The evidence is that the Responding Juror was speaking to one other juror when she made the comment about her relative's boyfriend and Bynum's family members looking at her.  Tr. of Juror Testimony at 4-5 (Oct. 28, 2005).  That statement was overheard by the Reporting Juror.  At the October 28, 2006, hearing, Bynum did not seek to question the Responding Juror or to develop any aspect of the Responding Juror's testimony.  There is no evidence that any

concedes that she is speculating by stating that what happened "is unknown." Def.'s Mem. in Supp. of Mot. for New Trial at 3. Most troubling is that Bynum had the opportunity to question the Responding Juror about what she said, to whom, how often, and in what context. Yet, she did not request to ask the Responding Juror any questions. Now, having passed on the opportunity to develop facts that would support her claim, she wants to question other jurors and cast doubt on the verdict. The court finds that Bynum's speculative theory does not offer "sufficient substance" that requires further inquiry beyond the hearings the court already has held and the opportunities it already has given Bynum. See 3 Wright, Miller & Kane, Federal Practice and Procedure § 554. Simply put, there is no reason to believe that any juror misunderstood the Responding Juror's comment in a way that prejudices Bynum. To permit the interviewing of jurors on such unsubstantiated grounds threatens the sanctity of the jury's verdict and the criminal justice system. See Tanner, 483 U.S. at 120-21 (stating that it is doubtful that the "jury system could survive [] efforts to perfect it" through post-verdict investigations because such inquiries would undermine finality of the process, reduce open discussion in the jury room, and disrupt the community's trust in the system).

---

other jurors heard the Responding Juror's comment, except the juror to whom she was speaking and the Reporting Juror. Nor is there any reason why the Responding Juror's comment would be of relevance to other jurors or would create prejudice against Bynum.

15

At the January 17, 2006, hearing, Bynum stated that if her motion to interview jurors is denied, then she moves for a motion for a new trial based on the same arguments.  Just as her theory is too weak to demonstrate a threshold showing that permits post-verdict interviews, her theory and its chain of multiple inferences are too weak to substantiate a strong presumption of prejudice.  See United States v. Brooks, 957 F.2d 1138, 1143 (4th Cir. 1992) (finding presumption of prejudice to be weak because of the unlikely and speculative chain of inferences that, during a twelve minute time span, jurors spotted a single extraneous matter in a seventy-three page transcript).  The instant case is analogous to Brooks.  Bynum hypothesizes that other jurors might have overheard the Responding Juror's comment, might have misinterpreted it, and might have misinterpreted it in a way so as to prejudice Bynum.  Such a theory simply creates a weak presumption of prejudice.  The argument is based on rank speculation and unsubstantiated inferences.

Finally, based on the strength of the government's case alone, there is no reasonable possibility that the verdict was based on prejudice rather than the evidence introduced at trial.  The evidence showed that Bynum's own bedroom in her own house contained more than 90 grams of crack cocaine, more than a dozen plastic baggies, razor blades, several hundred dollars in cash, a dresser with a false bottom, digital scales, a loaded gun in the midst of

16

ladies' clothes, and ammunition cartridges.  Bynum owned the car from which Coston dealt drugs.  Additionally, while the police were at Bynum's home, Bynum attempted to head straight to her bedroom.[19]  The evidence of Bynum's guilt is simply overwhelming.  The fact that the jury returned a verdict so quickly demonstrates that the jury easily came to unanimity because the evidence clearly pointed to guilt.  In fact, if anything, Bynum received as good a verdict as she could obtain in light of the evidence.  She was found guilty of conspiracy and being a felon in possession of a gun, but acquitted on the counts regarding possession of crack cocaine with intent to distribute and possession of a firearm to further a drug crime.  The jury also found her guilty of conspiring to possess with intent to distribute less than five grams of crack cocaine, despite the fact that more than 90 grams was found in her bedroom. In the face of the overwhelming evidence of guilt in this case, the weak presumption of prejudice is clearly rebutted.  Therefore, the court **DENIES** Bynum's motion for leave to interview the jurors, and **DENIES** her motion for a new trial on this basis.

### III.  Newly Discovered Evidence

### A.  Applicable Law

If new evidence corrects inaccurate evidence that was admitted

---

[19] At trial, Bynum disputed the issue of her reaction to the police through her witnesses.  For purposes of weighing the strength of the government's case on this motion for a new trial, the court finds that the government's evidence was more credible.

at trial, the court should grant a motion for a new trial, but only
if five requirements are satisfied.[20]  First, the evidence must be
newly discovered.  United States v. Chavis, 880 F.2d 788, 793 (4th
Cir. 1989).  Newly discovered evidence is evidence that is "in
fact...discovered since the trial."  United States v. Bales, 813
F.2d 1289, 1295 (4th Cir. 1987).  "[E]vidence is not 'newly
discovered' when it was known or could have been known by
the...defendant or his counsel" prior to trial.  Id. (citation and
internal quotation marks omitted).  This rule applies when the
defendant knows of documentary evidence prior to the trial, id.,
including public records, United States v. Christy, 3 F.3d 765, 769
(4th Cir. 1993).  Second, facts are "alleged from which the court
may infer due diligence on the part of the movant."  Chavis, 880
F.2d at 793.  Third, the new evidence is "not merely cumulative or
impeaching."  Id.  Fourth, the evidence must be "material to the
issues involved."  Id.  Evidence is not material "if it goes only
to a remote collateral issue."  3 WRIGHT, MILLER & KANE, FEDERAL PRACTICE
AND PROCEDURE § 557.  Fifth, the newly discovered evidence would
probably produce an acquittal.  Chavis, 880 F.2d at 793.  The
defendant "must make a showing that the 'newly discovered evidence'
undermined the integrity and reliability of his conviction."

_____

[20] The Fourth Circuit has recognized that there might be the
"rare" case in which a new trial can be granted despite a defendant
failing to establish all five elements.  See United States v.
Singh, 54 F.3d 1182, 1190 (4th Cir. 1995).  The instant matter is
not such a case.

18

United States v. Walton, 1998 U.S. App. LEXIS 10142, at *2 (4th Cir. 1998) (unpublished).  "[T]he court must evaluate the new evidence...in the light of the entire record made at the trial....The strength of the evidence presented at trial is an important consideration." 3 Wright, Miller & Kane, Federal Practice and Procedure § 557.  If the evidence introduced at trial demonstrates the defendant's guilt despite the new evidence, then the defendant has failed to show that the new evidence would probably result in an acquittal.  See Chavis, 880 F.2d at 793.

The movant has the burden of proving that each of these five elements is met.  United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995).  "[M]otions for new trial on the ground of newly discovered evidence are not favored, and are to be granted with caution." 3 Wright, Miller & Kane, Federal Practice and Procedure § 551.

**B.  Discussion**

First and foremost, Bynum fails the fifth element of the Chavis test.  McAndrew's testimony regarding the registration of the vehicle related two claims: the car was registered to Bynum, and the car was registered at 112 Ivey Street.  By far, the more important issue is that Bynum owned the car from which Coston dealt drugs.  That fact was true.  Thus, the DMV documents do not alter that aspect of McAndrew's testimony.  Rather, the DMV documents correct only the less important issue of the address of registration.  Whether the car was registered at 120 Ivey Street or

80 Cushing Street seems trivial in light of the substantial evidence against Bynum.[21] This evidence shows that Bynum's bedroom, in her house, contained more than 90 grams of crack cocaine, more than a dozen plastic baggies, razor blades, several hundred dollars in cash, a dresser with a false bottom, digital scales, a loaded gun in the midst of ladies' clothes, and ammunition cartridges.  It is incredulous to believe that the jury became convinced of Bynum's guilt because of the single issue of the address of a car's registration, when the other evidence showed Coston lived at both addresses, and in light of the substantial amount of evidence in Bynum's bedroom.[22]  In fact, the court finds it difficult to believe that the jury focused considerably on the address of registration.[23]

---

[21] See supra at 16-17.  The court further notes that during cross-examination, McAndrew specifically told the jury that his testimony was based on his notes and that he did not have the vehicle's registration before him.  Tr. of Trial at 19 (Testimony of Det. Timothy McAndrew, Oct. 12, 2005).  Therefore, Bynum successfully made the jury aware of questions regarding the accuracy of the testimony, making it less important than the undisputed evidence found in Bynum's bedroom.

[22] As the government points out, "[t]o expect the jury to acquit [Bynum] based only on this 'newly discovered evidence' is to expect them to ignore all of the other highly probative evidence presented by the Government."  Gov.'s Resp. to Def.'s Mot. for New Trial at 7.

[23] The address of registration has virtually no relevance. Bynum argues that the jury was convinced of her guilt because it believed that her car was registered at the address that Coston initially told police was his residence.  However, it would be every bit as incriminating, if not more so, if the jury understood that while Coston lived primarily at 112 Ivey Street, and Bynum lived at 80 Cushing Street, that the car which was used for drug dealing was registered to Bynum's residence, not Coston's.

As such, the evidence also fails element four.  Material facts are those regarding the discovery, in Bynum's bedroom, of drugs, plastic baggies, digital scales, a gun, and ammunition.  A fact that concerns the registration of the car "goes only to a remote collateral issue."  See 3 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 554.

Bynum also fails to establish the first requirement under Chavis.  The evidence "was not discovered since the trial."  See, Bales, 813 F.2d at 1295.  Bynum knew, prior to trial, the address at which her car was registered.  Bynum also knew that DMV documents would demonstrate this address.  Thus, she knew of the existence of the evidence before trial.  Bynum contends that she was surprised by McAndrew's incorrect testimony.  However, courts have found that evidence cannot be deemed newly discovered when a defendant actually knew about it prior to trial, even if she was not fully aware of its relevance.  See, e.g., United States v. Jaramillo, 42 F.3d 920, 925 (5th Cir. 1995) (finding that defendant's own transcript of videotapes did not constitute new evidence even though she could not have anticipated that the government would provide an incorrect transcript at trial); United States v. Lawhorne, 29 F.Supp. 2d 292, 304-05 (E.D. Va. 1998) ("Even if the defendant is in possession of the evidence before trial, but does not realize its relevance...the evidence is not 'newly discovered' for purposes of a motion for new trial.")

21

(citing <u>Jaramillo</u>, 42 F.3d at 925).[24]  Moreover, Bynum was on notice that the vehicle's registration was an issue that would arise at trial.  At a September 21, 2005, suppression hearing, held nearly three weeks before her trial, both Coston's and Bynum's counsel asked McAndrew about matters regarding the vehicle registration. Tr. of Mot. to Suppress Hr'g at 39 and 42 (Testimony of Det. Timothy McAndrew, Sept. 21, 2005).  Bynum cannot claim now that she is surprised that the matter came up during her trial.  If the issue is as material as she claims – so important that her guilt rode on the vehicle's registration – then she surely should have been prepared to prove the address of registration when the issue would arise.[25]  Thus, the DMV documents do not constitute newly discovered evidence.

Bynum's knowledge that the issue came up during the suppression hearing, combined with her purported belief in its significance, also demonstrates a lack of diligence on her part, thereby failing the fourth requirement for a new trial based on

---

[24] The Fourth Circuit has not addressed whether evidence the defendant knew about before trial can constitute newly discovered evidence, if she was not aware that the evidence would be important at trial.  However, the cases cited, <u>Jaramillo</u> and <u>Lawhorne</u>, did not find evidence to be newly discovered, if a defendant knows of the evidence before trial but is unaware of its relevance.

[25] Again, the court finds it incredulous that the address of a vehicle registration was a factor upon which the jury found Bynum guilty.  However, it is her argument that the address was of such great importance.  Therefore, she cannot now demonstrate surprise when (1) the matter came up during the suppression hearing; and (2) she considered the issue to be of extreme relevance.

newly discovered evidence.  See Bales, 813 F.2d at 1295 (stating that lack of diligence can be found if a defendant could have obtained evidence prior to and "in anticipation of trial"). Moreover, McAndrew's testimony occurred on the first one-and-a-half days of a three-day case.  At trial, Bynum never brought to the court's attention her belief that the address of the vehicle's registration was important information.  She never moved for a continuance, nor expressed to the court that, if given time, she could obtain evidence to disprove McAndrew's testimony.[26]

Accordingly, Bynum has failed to meet the first, second, fourth, and fifth requirements of the Chavis test.  The court **DENIES** her motion for a new trial based on newly discovered evidence.

### IV.  False Testimony

_____Bynum argues that McAndrew's testimony constitutes false testimony that warrants a new trial under United States v. Wallace,

---

[26] In United States v. Oglesby, 1993 U.S. App. LEXIS 25026 (4th Cir. 1993) (unpublished), the Fourth Circuit found that a defendant failed to act diligently when she was made aware of evidence during the trial, "but made no effort to obtain the [evidence] or continue the trial."  Id. at *10-11.  Here, Bynum claims that she sought to find her vehicle's registration.  However, according to Bynum, a continuance was essential.  She strongly emphasized that she could not locate her vehicle's registration, and that she could not go to the DMV to obtain a copy of her registration during the short time frame of her three-day trial.  Consequently, she never attempted to go to the DMV, and she did not move for a continuance.  There is not even a proffer that the DMV was contacted during the three-day trial, by Bynum or her counsel.  These failings demonstrate lack of diligence.

528 F.2d 863 (4th Cir. 1976).   <u>Wallace</u> sets forth a more lenient standard for granting new trial motions based on false testimony than for motions based on new evidence.   However, false testimony permits a new trial only if "a witness recants [his] testimony." <u>United States v. Maynard</u>, 77 Fed. Appx. 183, 188 (4th Cir. 2003). If a witness recants his testimony, then a new trial may be granted if: (1) the court finds that testimony given by a material witness is false; (2) that absent the false testimony, the jury "<u>might</u> have reached a different conclusion;" and (3) the defendant was taken by surprise when the witness falsely testified and she could not confront the false information until after the trial.   <u>Wallace</u>, 528 F.2d at 866 (emphasis in original).   All three requirements must be met.   <u>United States v. Carmichael</u>, 726 F.2d 158, 159 (4th Cir. 1984).

Here, none of the elements of <u>Wallace</u> are met.   McAndrew never recanted his testimony.   Additionally, McAndrew's trial testimony was not false.   He did not claim that he definitively knew that the vehicle was registered to 112 Ivey Street, or that his testimony was based on undisputed evidence in his possession.   Rather, he readily qualified the grounds on which his testimony rested.   He explained to the jury that his testimony regarding the vehicle's registration was based on his notes, and he stated that he did not have the vehicle's registration before him.   Tr. of Trial at 19 (Testimony of Det. Timothy McAndrew, Oct. 12, 2005).   With such

qualifications, his testimony was not false.  Moreover, as previously discussed, the evidence of guilt was so overwhelming, that it is incredulous to suggest that a jury found Bynum guilty based on testimony regarding the registration of her vehicle.[27] Thus, even absent McAndrew's testimony regarding the vehicle registration, there is no chance that the jury might have reached a different conclusion.  Finally, as the court has explained, but for Bynum's own lack of diligence, she easily could have confronted the alleged false information at trial.[28]

## VI.  Conclusion

For the reasons set forth above, the court **DENIES** Defendant's motions for leave to interview jurors and for a new trial.  The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for defendant and to the Assistant United States Attorney.

**IT IS SO ORDERED.**

_____
/s/
Rebecca Beach Smith

Norfolk, Virginia

March 16, 2006

---

[27] See supra at 16-17.

[28] See supra at 22-23.

25